| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV02487946 | D2 CM | 3252309 |

Rule 4 (B) Ohio

Rules of Civil Procedure

WALLACE CROPPER, ETC.     **PLAINTIFF**
VS
LEE R. BRODEUR, ET AL     **DEFENDANT**

## SUMMONS

THOMAS R. MIKLICH
C/O OM GROUP INC
50 PUBLIC SQUARE
3500 TERMINAL TOWER

CLEVELAND OH 44113-0000

You have been named defendant in a complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

Said answer is required to be served on: 

Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

**Plantiff's Attorney**

JOSEPH B JEROME
SUITE 1801

55 PUBLIC SQUARE
CLEVELAND, OH 44113-1901

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

Case has been assigned to Judge:

MARY J BOYLE
Do not contact judge. Judge's name is given for attorney's reference only.

GERALD E. FUERST
Clerk of the Court of Common Pleas

| DATE | |
|---|---|
| Dec 3, 2002 | By _____ Deputy |

COMPLAINT FILED   12/02/2002



THOMAS R. MIKLICH
50 PUBLIC SQUARE
50 PUBLIC SQUARE
3500 TERMINAL TOWER

CMSN130

## IN THE COURT OF COMMON PLEAS OF OHIO
## CUYAHOGA COUNTY

| | |
|---|---|
| WALLACE CROPPER, Derivatively on Behalf of Nominal Defendant OM GROUP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>LEE R. BRODEUR<br>c/o Om Group, Inc.<br>50 Public Square<br>3500 Terminal Tower<br>Cleveland, Ohio 44113<br><br>THOMAS R. MIKLICH<br>c/o Om Group, Inc.<br>50 Public Square<br>3500 Terminal Tower<br>Cleveland, Ohio 44113<br><br>JAMES P. MOONEY<br>c/o Om Group, Inc.<br>50 Public Square<br>3500 Terminal Tower<br>Cleveland, Ohio 44113<br><br>JOHN E. MOONEY<br>c/o Om Group, Inc.<br>50 Public Square<br>3500 Terminal Tower<br>Cleveland, Ohio 44113<br><br>FRANK E. BUTLER<br>c/o Om Group, Inc.<br>50 Public Square<br>3500 Terminal Tower<br>Cleveland, Ohio 44113 | CASE NO. _____<br><br>Judge: MARY J BOYLE<br><br>⦀⦀⦀⦀⦀⦀⦀⦀⦀⦀⦀  CV 02 487946<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**VERIFIED DERIVATIVE COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

```
MARKKU TOIVANEN                )
c/o Om Group, Inc.             )
50 Public Square               )
3500 Terminal Tower            )
Cleveland, Ohio 44113          )
                               )
EDWARD W. KISSEL               )
c/o Om Group, Inc.             )
50 Public Square               )
3500 Terminal Tower            )
Cleveland, Ohio 44113          )
                               )
KATHERINE L. PLOURDE           )
c/o Om Group, Inc.             )
50 Public Square               )
3500 Terminal Tower            )
Cleveland, Ohio 44113          )
                               )
            Defendants,        )
                               )
       and                     )
                               )
OM GROUP, INC.,                )
50 Public Square               )
3500 Terminal Tower            )
Cleveland, Ohio 44113          )
                               )
            Nominal Defendant. )
                               )
```

## VERIFIED DERIVATIVE COMPLAINT

Plaintiff, by his attorneys, submits this Verified Derivative Complaint (the "Complaint") against the defendants named herein.

## NATURE OF THE ACTION

1. This is a shareholder derivative action brought for the benefit of nominal defendant OM Group ("OMG" or the "Company") against the members of its Board of Directors seeking to remedy defendants' breaches of fiduciary duties.

- 2 -

## PARTIES

2. Plaintiff Wallace Cropper is, and was at all relevant times, a shareholder of nominal defendant OMG.

3. Nominal defendant OMG is a Delaware corporation with its principal executive offices located at 50 Public Square, 3500 Terminal Tower, Cleveland, Ohio 44113. According to its public filings, OMG is an international producer and marketer of metal-based specialty chemicals and related materials.

4. Defendant James P. Mooney ("James Mooney") serves as Chairman of the Board of Directors of OMG (the "Board") and Chief Executive Officer of the Company. James Mooney is the brother of defendant John Mooney.

5. Defendant John E. Mooney ("John Mooney") has served as a director of OMG since 1995. John Mooney is James Mooney's brother.

6. Defendant Edward W. Kissel ("Kissel") has served as a director of OMG and President and Chief Operating Officer of the Company since 1999. Due to his employment with the Company, in FY2001 Kissel received a total of $1,103,500 in salary and cash bonuses; 1,184,000 shares of OMG restricted stock; and options to purchase 20,000 shares of OMG common stock.

7. Defendant Thomas R. Miklich ("Miklich") has served as a director of OMG since 1993 and Chief Financial Officer of the Company since April 2002. Due to his employment with the Company, Miklich has received and will continue to receive hundreds of thousands of dollars in annual salary and cash bonuses, plus shares of OMG restricted stock, options to purchase OMG common stock, and other monetary benefits.

- 3 -

8. Defendant Lee R. Brodeur ("Brodeaur") has served as a director of OMG since 1991.

9. Defendant Frank E. Butler ("Butler") has served as a director of OMG since 1996.

10. Defendant Markku Toivanen ("Toivanen") has served as a director of OMG since 1991.

11. Defendant Katherine L. Plourde ("Plourde") has served as a director of OMG since February 2002.

12. Collectively, the defendants identified in paragraphs 4-11 will be referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

13. By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

14. The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.

15. To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

    a. ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business; and

    b. ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the Securities and Exchange Commission ("SEC") and the investing public.

16. The Individual Defendants were responsible for maintaining and establishing adequate internal accounting and financial reporting controls for OMG. According to GAAP, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure. Among other things, the Individual Defendants were required to:

    (1) make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

    (2) devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –

    (a)    transactions are executed in accordance with management's general of specific authorization;

    (b)    transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles.

17. Moreover, according to Appendix D to Statement on Auditing Standards No. 55, ("SAS 55"), management should consider, among other things, such objectives as: (i) making certain that "[t]ransactions are recorded as necessary ... to permit preparation of financial statements in conformity with generally accepted accounting principles ... [and] to maintain accountability for assets;" and (ii) make certain that "[t]he recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences."

18. According to SAS 55.13:

Establishing and maintaining an internal control structure is an important management responsibility. To provide reasonable assurance that an entity's objectives will be achieved, the internal control structure should be under ongoing supervision by management to determine that it is operating as intended and that it is modified as appropriate for changes in conditions."

19. As alleged in detail below, the Individual Defendants failed to implement and maintain an adequate internal control system for OMG, and thereby violated their fiduciary duties of loyalty and good faith.

20. The Individual Defendants further breached their duties of loyalty and good faith by: (i) causing or allowing the Company to conduct its business in an unsafe, imprudent, and unlawful manner; and (ii) causing OMG to suffer damages, as alleged herein.

## FACTUAL ALLEGATIONS

21. On September 19, 2002, the Individual Defendants caused OMG to issue a press release which stated:

> OM Group, Inc. (NYSE: OMG) today announced that, based on preliminary estimates, it expects earnings per diluted share for the 2002 third quarter will be below its prior earnings guidance of $.89 to $.94 per share.
>
> James P. Mooney, Chairman and CEO, stated, "If the current trends continue through the end of the quarter, cobalt volumes will be up 8 to 10 percent; nickel will continue to contribute as expected; auto catalysts will show double-digit growth; and metals management will be in line. However, with average cobalt prices in the quarter approximately 29 percent lower ($6.61 per pound versus $9.25 per pound a year ago) and three units of our Precious Metal Chemistry segment (Technical Materials, Jewelry and Electroplating) projected to be below expectations due to weak economic conditions, we currently expect the 2002 third quarter earnings per diluted share will be in the range of $.82 to $.86, versus $.84 reported in the third quarter of 2001. With this range, net income for the 2002 third quarter would be up approximately 14 to 20 percent compared to the same period a year ago."

22. The Individual Defendants' September 19, 2002 announcement had an immediate material effect on the price of OMG common stock, which plunged nearly 14%, from $50.81 to $43.75, on September 20, 2002.

23. On October 29, 2002, the Individual Defendants caused OMG to issue a press release which stated:

> OM Group, Inc. (NYSE: OMG) today reported net income and earnings per diluted share for its third quarter ended September 30 and the nine months of 2002.
>
> Net sales for the third quarter were $1.357 billion compared to $833.3 million last year. Net income before the non-recurring charge for the write-down of inventories ("the Charge") increased 10.2% to $22.6 million. Earnings per diluted share prior to the Charge was $0.79, down 6.0% from the same period last year due to a higher number of shares outstanding. Including the Charge, the Company reported a loss of $71.2 million, or $2.52 per diluted share.

. . .

Thomas R. Miklich, Chief Financial Officer, stated, "The Company continues to operate in a very difficult market environment. While net income prior to the Charge (discussed in more detail later in this release) improved from last year, results were positively impacted by favorable one-time events in the quarter. The Company's operating performance and cash flow were below expectations due to a number of factors, both external and internal, that are discussed in the review of operating performance set forth below. Based on the classification of the inventory write-down as a non-cash, non-recurring Charge, the Company is in compliance with its debt covenants."

James P. Mooney, Chairman and CEO stated, "The current difficult environment, including the low price of cobalt, will continue for the foreseeable future, resulting in further deterioration of operating results in the fourth quarter. This requires that we take bold steps to refocus the Company's strategy, discontinue unprofitable operations and implement aggressive cost reductions. From a liquidity standpoint, capital expenditures will be reduced, working capital will be managed aggressively and non-core assets will be sold." These actions and the timetable for developing a detailed plan are discussed later in this release.

## NON-RECURRING WRITE-DOWN OF INVENTORIES

During the third quarter of 2002, the Company took a non-cash, non-recurring pre-tax Charge of $108.2 million ($93.7 million after tax, or $3.31 per diluted share) to write-down inventories to the lower of cost or market. The facts and circumstances that led to the Charge include the Company's revised outlook for the price of cobalt and the decisions to start liquidating cobalt inventory to generate cash and to reduce cobalt production in the fourth quarter.

The Company now believes that the price of cobalt will stay between $6.00 and $7.00 per pound through 2003. The outlook for a continued weak economy, in general, as well as no foreseeable improvement in the demand for super alloys, are the key factors leading to this conclusion. While there are a number of promising potential new markets and applications for cobalt that would increase demand, the Company needs to make changes based on the current market conditions to improve operating performance.

. . .

The Company is currently developing an aggressive restructuring program to improve profitability and strengthen the balance sheet. The elements of the plan being developed include:

-- Realignment of the management team.

-- The closing or sale of unprofitable operations.

-- Sale of non-core assets to raise cash and improve focus.

- 8 -

-- Complete review and renegotiation of raw material sourcing contracts to reduce costs.

-- Aggressive cost reduction initiative covering all non-metal raw materials, operating expenses and SG&A. Based on a preliminary analysis, we have set a target of $75.0 to $125.0 million to be achieved by the end of 2003.

-- Reduction in capital expenditures to below $60.0 million for 2003.

This plan will be discussed in more detail during the week of December 9, 2002 with a press release and conference call. As you would expect, a restructuring charge will need to be taken in the fourth quarter to implement this plan. We are not in a position today to estimate the amount of the charge. The charge will have both cash and non-cash components.

24. The Individual Defendants' October 29, 2002 announcement had an immediate material effect on the price of OMG common stock, which plummeted an astounding 71%, from $30.90 to $8.95, on that day. The price of OMG common stock continued to slide in subsequent days, dropping to a low of $4.70 on November 11, 2002.

25. During the second and third quarters of 2002, the Individual Defendants received numerous reports regarding problems with OMG's accounting for cobalt inventories and the falling market price of cobalt. Such reports were glaring "red flags" which indicated that OMG's internal controls were deficient.

26. In breach of their fiduciary duty of good faith, the Individual Defendants wilfully ignored the obvious and pervasive problems with OMG's internal controls. The Individual Defendants made no effort to establish and maintain adequate internal controls or to take corrective action when put on notice of problems with OMG's accounting for cobalt inventories and the falling market price of cobalt.

27. The Individual Defendants' foregoing breaches of fiduciary duties caused the Company to suffer damages, including, but not limited to, enormous restructuring and inventory write-down charges.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

28. Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered by the Company as a result of the breaches of fiduciary duty and other violations of law by the defendants. This is not a collusive action to confer jurisdiction on this Court which it would not otherwise have.

29. Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

30. As a result of the facts set forth herein, plaintiff has not made any demand on the Company's Board of Directors to institute this action. Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action for the following reasons:

> A. Each of the Individual Defendants exhibited a sustained and systematic failure to fulfill their fiduciary duties, which could not have been an exercise of good faith business judgment;
>
> B. The principal professional occupations of defendants Kissel and Miklich are their employment positions with the Company, pursuant to which they have received and will continue to receive substantial compensation and monetary benefits, as alleged herein. Accordingly, Kissel and Miklich are legally incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action against the other members of the Board, particularly defendant James Mooney, the Company's Chairman and Chief Executive Officer, who is Kissel and Miklich's direct management superior, and defendant John Mooney, who is James Mooney's brother;

C. Due to his close familial relationship with James Mooney, defendant John Mooney is legally incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action against his brother James Mooney; and

D. OMG's directors' and officers' liability insurance coverage prohibits directors from bringing suits against each other. Thus, if the Individual Defendants caused OMG to sue its officers and directors for the liability asserted in this case, they would not be insured for that liability. They will not do this to themselves. The OMG officers' and directors' liability insurance was purchased and paid for with corporate funds for the protection of the corporation. This derivative action does not trigger the "insured vs. insured" exclusion, and therefore only this derivative action can obtain a recovery from OMG's officers' and directors' insurance for the benefit of the corporation.

## COUNT I

### AGAINST THE INDIVIDUAL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY OF GOOD FAITH

31. Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

32. As alleged in detail herein, each of the Individual Defendants had a duty to OMG and its shareholders to, *inter alia*, ensure that the Company was operated in a diligent, honest and prudent manner, and establish and maintain adequate internal controls for the Company.

33. The Individual Defendants did not establish and maintain adequate internal controls for OMG and did not make a good faith effort to do so; thus, they abdicated their fiduciary duty of good faith.

34. As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has suffered damages, as alleged herein.

WHEREFORE, plaintiff demands judgment as follows:

A. Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties;

B. Awarding to plaintiffs the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

C. Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

JOSEPH B. JEROME (0006359)
ROBERT A. SIDOTI (0069700)
JOSEPH B. JEROME AND ASSOCIATES
55 Public Square, Suite 2020
Cleveland, Ohio 44113
(216) 241-9990

Attorneys for Plaintiff

## JURY TRIAL DEMAND

Plaintiff respectfully requests a trial by jury for all issues in the within matter which are triable to a jury.

                                        JOSEPH B. JEROME (0006359)
                                        ROBERT A. SIDOTI (0069700)
                                        JOSEPH B. JEROME AND ASSOCIATES

                                                Attorneys for Plaintiff

Of Counsel:
SCHIFFRIN & BARROWAY, LLP
Robert B. Weiser
Eric L. Zagar
Lee D. Rudy
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004
Phone: (610) 667-7706
Fax: (610) 667-7056

## VERIFICATION

I, Wallace Cropper, hereby verify that I have reviewed the Complaint and authorized its filing and that the foregoing is true and correct to the best of my knowledge, information and belief.

DATE: 11/14/02

_____
WALLACE CROPPER